No. 33,847

FEDERAL FARM MORTGAGE CORPORATION, *Appellant*, v. NORA E. WOLFKILL, and ELMER E. WOLFKILL, Her Husband, PAUL E. WOLFKILL, and BLANCHE WOLFKILL, His Wife, and LOUISE BENNINGHAUS, *Appellees.*

(79 P. 2d 847)

Opinion
filed June 11, 1938.

*E. C. Brookens,* of Westmoreland, *W. E. Pepperell, Conrad L. Ball, J. P. Flinn* and *Donald I. Mitchell,* all of Wichita, for the appellant.

No appearance was made for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to foreclose a mortgage on real estate. Judgment was for plaintiff for the amount of the note and ordering foreclosure. The trial court refused to confirm the sheriff's sale. Plaintiff appeals from that order.

Defendants gave a first mortgage on a quarter section of land to the Federal Land Bank of Wichita for $3,100. This mortgage was given April 1, 1934. On the same date defendants gave a second mortgage on the same real estate to the land-bank commissioner for $2,200. This mortgage later became the property of the Federal Farm Mortgage Corporation, the plaintiff in this action. No interest was ever paid on this mortgage. On January 22, 1937, plaintiff exercised its option of accelerating the maturity of its indebtedness, and brought this action asking judgment on the note and that the mortgage securing it be foreclosed. Personal service was had upon all defendants. They did not appear or file any pleadings at any stage of the proceedings. Judgment was duly rendered on May 6, 1937, by default, in the amount of $2,782.92. Judgment was also rendered for the foreclosure of the mortgage as a second lien subject to the prior lien of the Federal Land Bank of Wichita in the sum of $3,100.

Pursuant to this judgment the land was ordered sold, and was sold by the sheriff on June 21, 1937. It was bought by the plaintiff, who was the only bidder, for $2,200. After taxes, cost and interest were paid there was left a deficiency judgment against defendants of $975.35.

A motion to confirm this sale was filed by plaintiff. A copy of this motion, which recited the amount of the bid and the amount remaining unpaid on the judgment, was served on defendants, together with a notice of the time and place of a hearing on the motion. Defendants did not appear at this hearing. The plaintiff introduced certain oral and documentary evidence and requested the court to make findings of fact and conclusions of law. The court complied with this request. Most of the findings set out the history

of the case about which there was no dispute. The findings with which we are concerned are as follows:

"10. The evidence discloses that the value of this real estate is generally the same as it was in 1934, when this loan was made, and that there has been no appreciable increase or decrease in the value of the same since the first appraisement.

"11. That the real estate involved herein, at the time of the sheriff's sale herein, was of the reasonable value of the two mortgages of record, plus the unpaid interest and taxes upon the same, plus the costs of this case.

"12. That the amount bid by the plaintiff at said sheriff's sale was not an adequate price for said real estate."

Pursuant to these findings the court concluded as a matter of law plaintiff ought not be granted a deficiency judgment against defendants; that the price bid at the sale was not an adequate price for the real estate and was not its fair and reasonable value.

The motion to confirm the sale was overruled and the sale set aside. Judgment was rendered in accordance with these findings and conclusions. This appeal is from that judgment. Defendants have not made any appearance nor filed any brief in this court.

At the outset it may be observed that the proceedings leading up to the sale were regular in every respect and the sale was made in conformity to law.

The matter under review here is covered by G. S. 1935, 60-3463, and G. S. 1935, 60-3463a. These two sections are as follows:

G. S. 1935, 60-3463, reads:

"The sheriff shall at once make a return of all sales made under this act. to the court; and the court, if it finds the proceedings regular and in conformity with law and equity, shall confirm the same, and direct that the clerk make an entry upon the journal that the court finds that the sale has in all respects been made in conformity to law, and order that the sheriff make to the purchaser the certificate of sale or deed provided for in this act."

G. S. 1935, 60-3463a, also reads:

"The court, in determining whether or not the proceedings in judicial sales are regular and in conformity with law and equity as expressed in section 60-3463 of the Revised Statutes of Kansas of 1923, may decline to confirm the sale where the bid is substantially inadequate, or in ordering a sale or a resale, may, in its discretion, if conditions or circumstances warrant and after a proper hearing, fix a minimum or upset price at which the premises must be bid in if the sale is to be confirmed, or the court may, upon application for the confirmation of sale, if it has not theretofore fixed an upset price, conduct a hearing to establish the value of the property, and as a condition to confirmation require the fair value of the property be credited upon the judgment, interest, taxes and costs. A sale for the full amount of the judg-

ment, taxes, interest and costs shall be deemed adequate. This act is intended as declaratory of the equity powers now existent in the courts under section 60-3463 of the Revised Statutes of Kansas of 1923."

Our inquiry is as to whether the sale was in conformity with equity or, in other words, whether the price paid by plaintiff of $2,200 was substantially inadequate. It should be noted that the land was sold subject to the lien of $3,100 first mortgage. When plaintiff bid $2,200 for the land it brought only what it was worth over and above this first mortgage.

Plaintiff argues there was no evidence that the price of $2,200 was not an adequate price for this real estate. The evidence offered by plaintiff consisted in the main of the testimony of two witnesses who appraised the land for plaintiff for the purpose of this hearing. One of them testified that he was an appraiser for the Federal Land Bank; that he appraised this farm a short time before the hearing; that it consisted of about 100 acres of pasture, about 40 acres of bottom land, 30 acres of very good land, about 10 acres just as good but cut off by a creek, then about 15 acres thin upland, then about 20 acres, part in grass and part under plow, which he valued at $20 an acre, then about 75 acres in bluffs along the creek with very little grass on it, which he valued at $10 an acre; that he valued the house at $1,500; that the barn was about to fall down. His valuation totaled $5,200. It will be noted that when the first lien of $3,100 is considered, the price bid by plaintiff was $5,300. Thus the testimony of this appraiser gave the value of the farm as $100 less than the bid.

We do not have the benefit of a brief on the part of the defendants, but we are enabled to understand the theory of the trial court by some testimony elicited by the trial court in an examination of this witness. In response to questions by the court he testified as follows:

"Q. Do you appraise land for the purpose of making loans or for the purpose of fixing up the property? A. Both.

"Q. You do make appraisement for the purpose of making loans? A. Yes.

"Q. And for the purpose of fixing up the properties? A. Yes.

"Q. What are the instructions in regard to the amounts land is to be appraised at? A. The Federal Land Bank loans are based upon 50 percent of the value of the property plus 20 percent of the value of the buildings. The emergency act made it so loans could be made at 75 percent of the appraised value of the land and buildings. We made loans first for the Federal Land Bank and then they furnished the rest from the commissioner fund.

"Q. Then when this loan was made at $5,300 they recommended not to exceed 75 percent. No answer.

"Q. You don't know what this place was appraised at? A. No.

"Q. Who appraised the place at that time? A. I don't know; we had 268 appraisers working.

"Q. At that time in 1934 when this place was appraised the conditions you talked about were the same as today? A. Yes.

"Q. What about the condition of the premises? Were they the same as today? A. Yes.

"Q. That pasture was just as rough as it was today? A. Yes, but there was grass on it.

"Q. You appraise that at $10 per acre? A. Yes.

"Q. The creek you say cuts the farm in two was there at that time just the same as it is today? A. Yes. It has been there a long time.

"Q. Is it the idea of the government that they appraised the land too high and made too big a loan? A. There is no doubt about that.

"Q. They are wanting the court to take care of their mistake; is that it? A. I don't know what they are wanting. They sent me to testify as to what the farm was worth.

"Q. What would you say generally as a witness as to the value of this farm generally as compared with its value in 1934? A. In this territory I would say there is very little difference, in some places it is a little better. Land is selling very low in this particular territory.

"Q. Here you think the value generally is about the same as in 1934? A. I would not think it would be any different."

It will be seen that had the original loan of $3,100 plus $2,200 been 75 percent of the value of the land, the total value would have been something like $7,000. The evidence just quoted is all the trial court heard on the subject. This is not evidence of value, but only evidence of what some appraiser must have thought the value was at the time the loan was made. Such evidence was not competent on the question the court was considering. It was hearsay.

The other appraiser testified that $4,500 would be a big price for the place. The next evidence introduced by plaintiff was the tax rolls of the county. This piece of real estate was carried on the tax rolls at $4,280. There was no evidence offered to controvert any of this evidence. Under such a state of the record we are compelled to reach the conclusion that there was no evidence in this record to sustain the finding of the trial court that the bid of $2,200 subject to the prior mortgage was not an adequate bid for the real estate, or that the real value of the land at the time of the sheriff's sale was the amount of the two mortgages plus the unpaid interest, taxes and costs in this case. On the other hand, we hold that the uncontradicted evidence required a finding that the price bid by plaintiff was adequate and that the value of the place was about the amount of the two mortgages, or $5,300. Such a finding would

have required a judgment confirming the sale and allowing a deficiency judgment.

The judgment of the trial court is reversed with directions to confirm the sale and to enter judgment in accordance with the views herein expressed.